Good morning, Your Honors. Christopher Johns for the defendant, Robert Coleman. Your Honors, I did submit a 28-J letter citing the Service's recent decision of United States v. Grob. Grob is dispositive on the test or the approach to be applied in determining similarity. And if that's so, as it obviously is, then what's your best shot that vandalism is similar to loitering? Your Honor, under that test, I believe that vandalism is similar to loitering. When we go through the five-prong test — I don't know. What's your best shot that it is not similar to loitering? Vandalism requires destruction of property. Loitering just requires hanging around. The punishments are different to an extent. In this case, Coleman's punishment was closer to the kind of punishment you would get for loitering. But the two crimes are totally different. And that's consistent with what we've held before. Your Honor, that's what this Court held before when this Court — I understand, but it's consistent with what we held before. Right. In evaluating the conduct test under Martinez-Carlos, the problem with that analysis is that that's a sole prong. But also, in that case, this Court used the model penal code. I'm not arguing about Carlos. All I said was it's consistent with how we saw the relationship between the two crimes before. Okay. So considering all of those things, what's your best shot at saying they are, in fact, like each other? My best shot is that they are like each other because, one, vandalism does involve invasion of property. Loitering involves an invasion of privacy. But they are both specific intent crimes. And they both — Well, but there are millions of specific intent crimes. So how does that distinguish them in any meaningful sense? That draws a parallel between them. And they both involve an evil purpose. And that's what the prior Ninth Circuit case Martinez-Carlos went off on. They said, well, there's this evil purpose. We don't have that in loitering. But that's not true. That's loitering under the model penal code. But if we take under 647H of the California penal code loitering, there is an evil purpose. Because it's not only the invasion of privacy just wandering around. There's an additional element. And the element is this. You're there awaiting the opportunity to commit another crime. Otherwise, it's not loitering. It's just being there. So there's really two crimes here. I mean, so what? It could be to commit the crime of vandalism, right? It could be loitering to commit another crime, which would be vandalism. It was any crime that presents itself. That's why you're there. You're there for an unlawful purpose. And then you're there to commit another crime. You have no business being there to begin with. And then you're going to commit another crime. And that's where the similarity comes in between vandalism and loitering. They are different types. But we're not going we're no longer going with the elements test. That's been rejected by the Sentencing Commission. And Rob noted that. That's why when we go back and we look at this, the issue is, is this really a minor offense? And it is. Because they both involve six months in jail and maybe a $1,000 fine. It's really the same punishment. But what is really important here is the actual punishment imposed is 36 months probation. And that's a very low-level sentence. There's no fine, no community service, no jail time. So it's the issue is the level of culpability. The level of culpability is low here, as it is in loitering. That's where the similarity is. Also, when we go back and we look at the likelihood of recurring criminal conduct, we look at in isolation. There's no hindsight test. This was a vandalism here. There's no indication that this is going to be repeated. The record is very sparse. What we have is a conviction for vandalism and a sentence of probation of 36 months, which indicates that it was for less than $400. That's a misdemeanor. Loitering is akin to that. You're on someone's property invading their privacy, and at the same time you're going to commit another crime. Or there's no crime of loitering. That's why the two are similar with regard to those. And as Grob noted, that the elements can have some distinct differences and still be similar. So while one is an invasion of property and the other is an invasion of privacy, there is that distinction, but that's not dispositive, because what we're trying to evaluate here is the conduct, the level of conduct, and the level of conduct here is very low, 36 months probation. That's why I would submit to Your Honor, and I did brief it in my opening brief, why I felt those five elements applied, and then Grob came down. Counsel, you compared loitering under the California Code to vandalism. Correct. But the term loitering appears in the sentencing guidelines, and our court in Carlos Martinez's case took loitering under the model penal code not specific to California. That's correct. Why wouldn't we then compare vandalism under the California Code to the model penal code's definition of loitering? For the same reason in Grob, you took the Montana statute and you compared the Montana statute, I believe it was with regard to the contempt, and you went ahead and you used the Montana statute in that case, and you noted that the Montana statute was similar to the model penal code, and yet you went off on the Montana statute. You noted that you could either use the State statute or the model penal code statute. That would mean that we might have a different rule in the nine States of the Ninth Circuit depending on what their loitering statute said. Well, you could when you're trying to measure the level of culpability, and that is a distinction, whether you're going to, you know, there's no Federal rule with regard to loitering. The Court made that point in Martinez-Carlos. I don't think the model penal code provides a sentence, does it? No. It's a definition. It's a definition. That's really what we're going with. And that would be one reason why we would look to a State statute, such as a loitering statute, in order to give us some kind of measure of culpability by looking at the comparability of the instances. Correct. By looking at the definition. And that's why there is a distinction when you look in the model penal code with regard to loitering and you look in the California penal statute with regard to loitering. They're different. Because in the California penal code, 647H, there's this evil intent requirement that you have to be there for the purpose of committing another crime, which I didn't see in the Court's analysis with regard to the Martinez-Carlos case when dealt with the model penal code definition of loitering. And since we're dealing with California law and we're trying to determine the level of culpability, that's why I used the California statute. And that's precisely what this circuit did in the Grob decision. You used the Montana State statute in comparison the jurors. Is there anything in Grob or in anything else that would suggest that our methodology in Carlos-Martinez was wrong? I understand that we've got the new comments to the sentencing guidelines, which may require us to reexamine this, but that's different. Yeah. In Grob, I think it's very specific where it rejects the strict elements test. And there's language in Grob that says that the Sentencing Commission has rejected the strict elements test. And the strict elements test is a variation of the conduct test that this circuit employed in Martinez-Carlos. I just wanted to have a – if there's no other questions, I just had a couple other comments. I do believe that this is plain error. It's the common-sense approach. This would commit within the – there's error. It's plain. It affects the client's rights. And also, it affects the integrity of our judicial process to apply the wrong sentencing range. I note that the government did argue that there's some form of harmless error here. But this case would not meet the harmless error standard, because under Gall and Cardi, it makes very clear in the – I think it's the Casey cites Munez v. Camerano footnote 5. They say, look, you have to bear in mind the correct sentencing range throughout the process. And in this case, the district judge said in the beginning of sentencing that this is a Category 2, Level 26, 70-87th month sentencing range. That's what he said at the beginning, and that's what he said at the end. That's what the court had in mind, that sentencing range. He didn't have in mind any other sentencing range. And that's why this notion of harmless error under footnote 5 to this Munez Camerano case would not apply. There's one other comment that I just want to address that the government made, and that's that there's a suggestion that the district court would have applied the sentence anyway because the court was considered – concerned about this criminal history with regard to recidivism. And the suggestion is, is that the court could have given a departure for the criminal history. But under 4A, I think it's 1.3, there could be no departure here, because while you had 13 convictions, prior convictions, I think five of them were for – eight of them were for violations of the vehicle code. Five of them were for driving with a suspended license. And with regard to the 12 arrests, well, the policy statement in the sentencing guideline makes very clear you don't consider arrests if you're going to look at a departure. There's no basis to have a departure here. What the district judge was doing was he said, you're right on mitigation. Mr. Coleman had some family circumstances, had some health issues that the court wanted to consider, and he told the prosecution, you're right on this criminal history, that there's an issue here of recidivism. And the court then weighed them in the context of the sentencing guideline range of 70 to 87 months. The government asked for 87 months. The probation said give them 70 months. So the judge gave a two-month bump, 72 months. That was the weighing and the balancing test that the court did. Within the confines of this sentencing range, 70 to 87 months. There's no reason to think that this district judge is not going to come up with the same analysis if it's what we submit should be 63 to 78 months, which would be a criminal history 1, level 26, and come up with 65 months. There's something else appropriate but would be less than Mr. Coleman received. You know, that's why we're here. That's why there would be no harmless error here. There is plain error. I cited the Seventh Circuit Garrett decision that in computing a criminal history, if you get it wrong, it is plain error. Thank you, Mr. Johns. Mr. Williams. Good morning. May it please the court, Mark Williams on behalf of the United States. As an initial matter, the government concedes that the proper standard here is the common sense approach in the guidelines that was made clear in the Grove decision and the Lichtenberg decision that came down recently. However, that doesn't change the analysis here. The analysis under plain error review is obviously whether the district court erred, but also whether that error was prejudicial in this case. Here at sentencing, the district court adopted the pre-sentence report without objection. The pre-sentence report included the vandalism conviction, referenced the guidelines section that applied, and the guidelines here, because it was a 2007 edition, included the common sense test. There's no indication that the district court misapplied the law, applied the wrong test, or that the PSR misapplied the law or applied the wrong test. To the contrary, it appears that the common sense approach in the guidelines was incorporated at the sentencing hearing. In addition, when one compares vandalism and loitering, as Your Honor noted, the offenses are completely different, and that's true under either the common sense approach or under Martinez-Carlos. Martinez-Carlos, although it's associated with the elements test, actually examined many of the same factors that are present in the common sense approach. It examined the seriousness of the offense. It examined the culpability involved. It examined the elements. It examined the intent. It examined whether or not vandalism could lead to future criminal conduct or predict future criminal conduct. Those are all relevant under the common sense approach. In fact, the only element that wasn't examined is the punishment aspect, and the common sense approach in the guidelines isn't a strict elements-driven test. These are simply factors the application note makes clear to be applied, among others. So the methodology and the analysis in Martinez-Carlos is sound and controls here, as well as the conclusion that vandalism and loitering were. What if it doesn't? I mean, Grove seems to be, although it doesn't say so, the bottom line. But it says, the guidelines now, the amendment 709, is the analysis. So if it is, it is. And so what's your position on that? The government's position is that it doesn't matter because there's no error here. And under plain error. Well, I understand. But I mean, I understand that's the government's position. But why? Okay. So how does the government see rule amendment 709 playing out? Yes, Your Honor. The Court incorporated amendment 709 by incorporating the PSR. And although the ---- I understand that. My question to you is, if you take amendment 709 and the criteria in it, how do you come out? Applying amendment 709, you come out that vandalism and loitering are different. And Grove is in ---- Because? Because in Grove, is applicable for another reason. In Grove, the criminal mischief was compared to disorderly conduct. And as it turns out, criminal mischief and vandalism are nearly identical offenses. And what the Court in Grove found was that criminal mischief is similar to disorderly conduct and would be included under the guidelines if the sentence was for more than one year probation. Here, the sentence for vandalism was 36 months probation. And the Grove analysis, because it came down recently, would control here. And because criminal mischief and vandalism are nearly identical, necessarily vandalism and disorderly conduct would be identical, so vandalism would be included under the guidelines. That's a straight application of the common sense approach that examines all of the similarities and differences between criminal mischief and disorderly conduct. And that analysis would apply to vandalism as well. Okay. Well, even though vandalism is a waffler, Coleman got 36 months probation, which is more similar to what you would get for loitering, which would be ---- which is always a misdemeanor. So does that weigh in favor of Coleman or not? The punishments are similar. They're not identical. Vandalism can be charged as a felony, and that indicates that it's a more serious offense. But I think simply because the punishments are similar doesn't necessarily mean that vandalism should not be included under the guidelines, because all of the other factors under the common sense approach indicate that vandalism and loitering are completely different. Vandalism is a more serious offense. It involves a readiness to do evil. Loitering does not. Vandalism involves actual victims. Loitering does not. Vandalism can be charged as a felony. Loitering cannot. You can get a longer prison sentence for vandalism than you can for loitering. And the mens rea required to prove vandalism maliciousness is not present in the loitering offense. So under virtually any analysis, the conclusion is the same, that vandalism and loitering are different. However, under plain error review, the defendant also must establish prejudice. Here, he has not established that the result would have been any different at the sentencing hearing had the court determined that the defendant was in criminal history category one. That's because in the record, the district court focused on two things. First, the uncounted offenses and the fact that criminal history category two understated the defendant's criminal history. Necessarily then, if the defendant was in criminal history category one, the district judge would have found that the criminal history was even more significantly understated and would have departed upward to a greater extent. In addition, the court focused on the obstruction aspect of the case and found that the guidelines overall understated the defendant's culpability. So if the range was lower here, as it would be if he was in criminal history category one, the court would have still departed upward because it focused at the sentencing hearing as the record makes clear on the fact that the defendant fled, the fact that the obstruction enhancement did not adequately account for that flight. So here on the record, there is no reasonable probability that the court would have done anything different. That's defendant's burden in this case. He has not established that there's any probability whatsoever that the court would have done anything different. And so the government would submit that in addition to being no error, there is no prejudice shown here. And if the court doesn't have any further questions, the government would submit on that. Okay. Thank you, Mr. Williams. Thank you, counsel. The matter just argued will be submitted. And the next matter on the argument calendar is HK China Group versus Beijing United.
judges: Alarcon, Rymer, Bybee